UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHINA CONNER,**

          **Plaintiff,**

    v.                             **Civil Action 2:20-cv-1754**
                                   **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

## OPINION AND ORDER

Plaintiff, China Conner ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 19), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 16.) For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

This matter is also before the Court on the Commissioner's request for leave to file excess pages with its Memorandum in Opposition. (ECF No. 20.) For good cause shown, the Commissioner's Motion is **GRANTED** and the undersigned considers the entirety of the Commissioner's Memorandum in Opposition.

### I.     BACKGROUND

Plaintiff filed her application for Title II Disability Insurance on November 22, 2016, alleging that she had been disabled since July 5, 2014. (R. 396.) Following administrative

denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Valerie A. Bawolek (the "ALJ") held a video hearing on December 11, 2018. (*Id.* at 201–37.) Plaintiff, represented by counsel, appeared and testified. Lee T. Besen, M.D. (the "ME"), and Gary Bennett, Ph.D., also appeared and testified. (*Id.*) On the ME's recommendation, the ALJ ordered that Plaintiff have a consultative medical examination before the ALJ issued her decision. (*Id.* at 214, 236.)

The ALJ held a supplemental video hearing on April 15, 2019, following the consultative medical examination. (*Id.* at 178–200). Plaintiff, represented by counsel, the ME, Dr. Mary Buban, and Vocational expert Patricia McFann (the "VE") appeared and testified at the hearing. (*Id.*) On May 6, 2019, the ALJ issued a decision denying benefits. (*Id.* at 10–31.) On March 13, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. 1–7.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff raises the following contentions of error: (1) the ALJ erred in her consideration of the ME's opinion and, therefore, erred in her step three analysis; (2) the ALJ failed to give appropriate weight to the opinions of Lisa Copenhaver, the treating physical therapist; (3) the ALJ erred in her consideration of Plaintiff's pain symptoms; and (4) the ALJ erred in determining that Plaintiff's headaches are not a severe impairment. (Pl.'s Statement of Errors 22–34, ECF No. 19.)

## II. ALJ'S DECISION

On May 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–31.) At step one of the sequential evaluation

process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 5, 2014, the alleged onset date, through December 31, 2018, the date last insured. (*Id.* at 15.) At step two, the ALJ found that Plaintiff had the severe impairments of obesity, lumbar levoscoliosis, and knee arthralgia. (*Id*. at 15–17.) The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17–18.) At step four of the sequential process, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work. (*Id.* at 18–23.) Finally, the ALJ found at step five that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 24.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id*.)

### III. RELEVANT RECORD EVIDENCE

The following summarizes the record evidence relevant to Plaintiff's statement of errors:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    A.      **Pain Issues**

        1.      **Plaintiff's Testimony**

At the 2018 hearing, Plaintiff testified that her "back does not allow [her] to do a whole lot" and that her knees and back hurt when she tries to reach above her head or bend down. (*Id.* at 217–218.) She testified that she had trouble with personal hygiene, could drive for forty-five minutes, and did not go grocery shopping often. (*Id.* at 218–20.) She testified that her knee pain was constant, that her knee "pops out of place a lot and goes numb," and that "if I try to squat down, I can't stand up because my knees buckle and give out." (*Id.* at 218–20.) She testified that she wore a knee brace every day and that it helped, but that her knees would still sometimes give out and she would fall to the floor. (*Id.* at 221–23.) Plaintiff testified that her back pain "never goes away" and that it affects her ability to do household chores, care for herself, and sleep. (*Id.* at 224–25, 229.)

        2.      **Lee T. Besen, M.D., Medical Expert**

Lee T. Besen, M.D. testified as a medical expert at the 2018 hearing. (R. 206–15.) Dr. Besen testified that the severity of Plaintiff's conditions was not well developed in the record, and that there were no objective medical findings to support a conclusion that Plaintiff's back problems met or equaled a Listing. (*Id.* at 208–14.) Finally, he recommended that the ALJ order a consultative examination, and the ALJ agreed to order one before issuing a decision. (*Id.* at 214–15.)

Dr. Besen testified again at the 2019 hearing, this time opining that Plaintiff would meet Listing 1.04A. (R. 182–88.) He testified that during the consultative examination, Plaintiff had a positive straight-leg raise test, which he cited as the basis for his changed opinion as well as "that original MRI six years ago, with epidural injections, with physical therapy and with

4

findings by the [consultative examiner]." (*Id.* at 184–87.) Dr. Besen testified that Plaintiff's back issues would preclude her from doing a seated job. (*Id.* at 187.)

3. **Lisa Copenhaver, P.T., D.P.T., M.P.T, Treating Physical Therapist**

In August 2018, Lisa Copenhaver, P.T., D.P.T., M.P.T., Plaintiff's treating physical therapist, completed a medical source statement (R. 1012–13.) Ms. Copenhaver noted that Plaintiff could lift 20 pounds occasionally and 5 pounds frequently; could walk/stand for a total of five hours, but only an hour at a time; and could sit for a total of five to six hours, but only one hour at a time. (*Id*. at 1012.) Ms. Copenhaver noted that Plaintiff experienced severe pain and needed to be able to elevate her legs to 45 degrees at will. (*Id*. at 1013.)

Ms. Copenhaver also completed an initial physical therapy evaluation on the same date. (*Id*. at 1014–17.) In the initial evaluation, Ms. Copenhaver noted that Plaintiff reported walking on a treadmill for 10–15 minutes at a time (*id.* at 1014) and that Plaintiff "is able to perform ADL's greater than what she reports." (*Id.* at 1016.) Ms. Copenhaver stated Plaintiff would benefit from physical therapy and advised Plaintiff to wean off oxycodone, "get active and return to work." (*Id.*)

4. **Additional Medical Records**

Throughout the record, Plaintiff reported pain, especially in her back and knees, but imaging and physical exams were generally normal. (*See, e.g.,* R. 40, 42–44, 74, 108, 520, 579–81, 651, 707, 1064–65, 1156, 1192, 1299–1300, 1359–61.) Although Plaintiff went to the emergency department multiple times for pain, at other times, Plaintiff denied having back pain or otherwise did not report body pains. (*See, e.g. id.* at 112–16, 638, 708–17, 1133, 1173.)

Various treatment options did not consistently help Plaintiff's pain. For example, Plaintiff sometimes reported that physical therapy or medication was working well, but other times reported minimal improvement or even worsening of symptoms. (*See, e.g., id.* at 823, 825,

5

883, 899, 1073, 1307, 1340–42.) She also reported that spinal injections did not help. (*Id.* at 47.)

Plaintiff complained that her pain interfered with her daily activities. For example, in a 2012 assessment at a spine center, Plaintiff reported that the pain was very severe and that she had difficulties with reading, concentration, and that she was unable to work or do her usual recreational activities. (R. 835.) At other times, she reported difficulty sleeping, walking, standing, and sitting for long periods. (*Id.* at 672, 689.) Plaintiff had several different diagnoses for her pain, including rheumatoid arthritis; chronic pain; myalgia; non-intractable headaches; fibromyalgia; and subluxation of the right patella. (R. 39, 102, 644.).

In January 2019, Plaintiff had a consultative examination, at the recommendation of the Medical Expert. (R. 1234–40.) At the evaluation, she reported back pain and right leg numbness. (*Id.* at 1235–40.) The examiner noted that she walked with a normal gait without assistance and that all "major joints appear[ed] anatomically normal without evidence of inflammation." (*Id.* at 1235.) The examiner also noted that Plaintiff was positive on the left side for straight leg raise test. (*Id.*)

**B.     Headaches**

    **1.     Plaintiff's testimony and reports**

At the 2018 hearing, Plaintiff testified that she had been having migraines since she was nine years old. (R. 226.) She said that when she has a migraine, she gets "somebody to help with my kids and I take hot baths. I lay in bed. I usually don't eat anything." (*Id.*) She testified that she had been on many different medications to help with her headaches, but that none of them helped. (*Id.* at 227.) She said that she was currently taking Topamax and Aleve to help with her headaches, but that these medications did not help either. (*Id.*)

### 2. Medical Records

From 2013 through 2018, Plaintiff sometimes reported headaches to her providers. (*See, e.g.,* R. 541, 638, 772, 1159, 1222.) At other times, Plaintiff denied having problems with headaches. (*See, e.g., id.* at 621, 1028, 1179.) Plaintiff had imaging of her head in 2015 and 2019, which was unremarkable. (*Id.* at 612, 684, 1349–54.) In 2014 and 2015, Plaintiff went to an emergency department complaining of headaches. (*Id.* at 613, 786.) Plaintiff repeatedly reported that medication did not help her headaches, or that she could not tolerate the headache medication. (*See, e.g., id.* at 663, 676, 1008.)

### IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff raises the following contentions of error: (1) the ALJ failed to give appropriate weight to the opinions of Lee T. Besen, M.D., the medical expert; (2) the ALJ failed to give appropriate weight to the opinions of Lisa Copenhaver, the treating physical therapist; (3) the ALJ erred in her consideration of Plaintiff's pain; and (4) the ALJ erred by failing to determine that Plaintiff's headaches were a severe impairment. (Pl.'s Statement of Errors 22–34, ECF No. 19.)

**A.  The ALJ's consideration of the ME's opinion, and conclusion that Plaintiff did not meet or equal Listing 1.04A, is supported by substantial evidence.**

Lee T. Besen, M.D., testified at the second hearing that Plaintiff met or equaled Listing 1.04A. (R. 182–88.) The ALJ, however, found that Plaintiff did not meet that Listing, discounting Dr. Besen's opinions. (*Id.* at 17, 22.) Plaintiff argues that the ALJ's failure to adopt Dr. Besen's opinion, and the ALJ's subsequent conclusion that Plaintiff did not meet or equal Listing 1.04A, requires remand. (Pl.'s Statement of Errors 22–25, ECF No. 19.) The Court concludes that this argument is best characterized as a challenge to the ALJ's step-three determination that Plaintiff did not meet or equal Listing 1.04A.

8

In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). The claimant shoulders the burden of producing medical evidence that establishes that all of the elements are satisfied. It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Plaintiff has not carried her burden to offer evidence that her impairment meets every requirement of Listing 1.04A. This Listing requires:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04A.

In finding that Plaintiff did not meet the criteria of Listing 1.04A, the ALJ explained as follows:

9

> The claimant's lumbar levoscoliosis is evaluated under Section 1.04 of the listings for disorders of the spine. However, there is no evidence that the claimant's condition results in compromise of a nerve root with (A) evidence of nerve root compression, (B) spinal arachnoiditis, or (C) lumbar spinal stenosis resulting in pseudoclaudication as required to meet the criteria of the listing. The claimant has history of MRI showing only mild lumbar levoscoliosis with no significant lumbar abnormality identified (Exhibit 8F, p.114). The undersigned has also considered *Acquiescence Ruling (AR) 15-1 (4) in Radford v. Colvin, 734F3d 288 (4th Cir. 2013).AR 15-1 (4)* by determining that there is no evidence of limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) within a 12-month period. The claimant had two examinations in August 2017 and January 2019, during which she demonstrated straight leg positive testing at 40 degrees (Exhibits 2F and 23F). However, there are numerous examinations through the date last insured when the claimant had negative straight leg raising, as well as normal gait and strength of all extremities. For instance, primary care and orthopedic records in particularly indicated the claimant had normal range of motion of the cervical and lumbar spine. She had negative straight leg raise test and normal gait (Exhibits 2F, 9F, 15F 16F, and 29F).

(ALJ Decision, R. 17.)

Plaintiff does not dispute the portions of the record on which the ALJ relied, but she insists that the ALJ should nevertheless have found Listing 1.04A satisfied based on the ME's opinion at the second hearing. The ALJ did not expressly consider the ME's opinion at step three, but she considered the ME's opinion as part of crafting Plaintiff's RFC at step four as follows:

> At the hearing on December 11, 2018, Dr. Besen testified the claimant alleged several impairments, but none of them were at a severity as to meet the criteria of a listing. Dr. Besen noted there was no consultative examination and only a physical therapist opinion. He stated fibromyalgia was of questionable severity. Dr. Besen testified the claimant had cervical, lumbar, and thoracic spinal disease- treated with pain management. He pointed out that according to records in Exhibit 2F, asthma had no impact alone or in combination. Dr. Besen noted the claimant's mild persistence asthma was a common disease and workable. He stated the claimant's knee issue was not well supported. Dr. Besen testified there was no evidence that the claimant was unable to perform a 40-hour workweek. He indicated that records in Exhibit 1lF were credible in some respects, but were not from a treating physician. Dr. Besen noted the claimant's lifting, standing, carrying, squatting were only minimally impaired. He stated that subluxation of the knee was rather common and would have minimal impact on the totality of the

10

> claimant's medical condition. Dr. Besen testified there was no need for the claimant to elevate her leg. He thought a consultative physical examination was appropriate.
>
> At the supplemental hearing, Dr. Besen testified there is little evidence of asthma, chronic fatigue, or migraines. However, Dr. Besen then opined that the claimant's condition medically equals the criteria of listing 1.04A based on the positive straight leg raising and subluxation of the right knee. In his opinion, a 40-degree positive straight leg raising is significant. Dr. Besen stated the claimant had multiple injections. He testified the claimant has lumbar spine disc disease, but the record did not include an MRI. Dr. Besen indicated that testing on January 17, 2013, showed scoliosis. He noted the claimant was given marked limitations in the residual functional capacity in Exhibit 23F. The undersigned gives little weight to this opinion, as Dr. Besen is essentially basing it only on the assessment of the claimant by Dr. Gatton, as his current testimony differs greatly from what he stated at the prior hearing. Dr. Besen referred to the claimant's positive straight leg raising test and subluxation of the right knee as a basis for his opinion. However, he apparently ignored the numerous orthopedic, primary care, and even pain management examinations (previously cited) through the date last insured when the claimant displayed normal straight leg raising. Orthopedic records reflect effective treatment of the claimant's knee condition, as she consistently demonstrated normal gait. Despite the effective treatment, the undersigned considered the claimant's obesity as well as her back and knee impairments, by restricting her to only sedentary work.

(ALJ Decision, R. 22–23.)

The undersigned finds no error with the ALJ's consideration and weighing of the ME's opinion. The ALJ articulated the weight she gave the opinion and explained it was not entitled to greater weight because it was inconsistent with the record as a whole, as well as the ME's own previous opinion. In particular, the ME relied on Plaintiff's subluxation of the right knee as a basis for his opinion at the second hearing that Plaintiff equaled Listing 1.04A; however, at the first hearing, the ME testified that subluxation of the knee was rather common and would have minimal impact on the totality of Plaintiff's medical condition. In light of the ME's inconsistent opinions across the two hearings, and the multiple findings of negative straight leg tests that the ME apparently ignored, the ALJ appropriately discounted the ME's opinion. *See* 20 C.F.R. § 416.927(c)(3)–(4) (identifying "supportability" and "consistency" as relevant considerations

11

when evaluating an opinion). The ALJ therefore did not err in refusing to adopt the ME's conclusion that Plaintiff met or equaled Listing 1.04A.

Finally, Plaintiff has not carried her burden to identify evidence demonstrating that the she meets or equals the Listing's criteria. Although Plaintiff points out that she experiences pain, limitations in spinal range of motion, and positive straight-leg raising tests (Pl.'s Statement of Errors 25, ECF No. 19), Plaintiff does not point to any evidence in the record that would satisfy the criteria related to sensory or reflex loss. Further, the only reference to muscle atrophy that Plaintiff provides seems to be in relation to a dislocated patella, not her back. (*See id.*; *see also* R. 1042.) Plaintiff has therefore failed to identify evidence demonstrating that she meets the criteria of Listing 1.04A, for which she carries the burden at step three. *Sullivan*, 493 U.S. at 530; *Dorton*, 789 F.2d at 367.

**B.     The ALJ did not err in her consideration and weighing the treating physical therapist's opinion.**

Plaintiff next argues that the ALJ failed to give appropriate weight to the opinions of Lisa Copenhaver, Plaintiff's treating physical therapist. (Pl.'s Statement of Errors 25–27, ECF No. 19.) According to Plaintiff, Ms. Copenhaver's opinions are consistent with the record as a whole and thus the ALJ should have given her opinions greater weight. (*Id.* at 27.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Physical therapists like Ms. Copenhaver, however, are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513, 416.913. Although

12

the ALJ must consider opinions from "other sources" and "generally should explain the weight given," . . . "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v. Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care"); 20 C.F.R. § 416.927(f)(2) (providing that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. . .")  The ALJ considers "other source" opinions using the same factors for weighing a medical opinion from an acceptable medical source, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1).  The relevant factors include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source.  20 C.F.R. § 416.927(c)(1)–(6).

Here, the ALJ considered the opinions of Ms. Copenhaver and assigned them "little weight." (R. 20.) The ALJ explained his consideration of Ms. Copenhaver's opinion as follows:

> Ms. Copenhaver also completed a physical assessment on August 1, 2018, indicating the claimant could lift and carry 20 pounds occasionally and five pounds frequently. The claimant could stand or walk for one hour without interruption, but a total of five hours in an eight-hour day. She could sit one hour without interruption, but a total of five to six hours in an eight-hour day. The claimant could rarely climb, stoop, crouch, kneel, and crawl. She could occasionally balance. Ms. Copenhaver indicated the claimant had severe pain and needed to elevate her legs to 45 degrees at will. She indicated the claimant needed to take additional unscheduled breaks of 15 minutes every hour during an eight-hour workday outside of a standard 30-minute lunch and two 15 minute breaks. The undersigned gives

13

> little weight to this opinion, as the severity of limitation are not even consistent with the objective findings noted by Ms. Copenhaver during the claimant's physical therapy evaluation. Ms. Copenhaver, a physical therapist, completed the assessment after only one initial evaluation of the claimant and the limitations are not supported by orthopedic and primary care records. Furthermore, the claimant was not compliant with the recommended physical therapy, as she was discharged on August 14, 2018, due to noncompliance after attending only two sessions.

(R. 20.)

Applying the above standards, the Court finds that the ALJ did not err in her consideration and weighing of Ms. Copenhaver's opinions. First, the ALJ properly considered and reasonably concluded that it was only partially consistent with the overall evidence in the record. (R. 20); *see* 20 C.F.R. § 416.927(c)(3)–(4) (identifying "supportability" and "consistency" as relevant considerations when evaluating an opinion). The ALJ also properly considered that Ms. Copenhaver completed the assessment after only one evaluation of Plaintiff. (R. 20); *see* 20 C.F.R. § 416.927(c)(2) (identifying nature and extent of the treatment relationship, the length of the treatment relationship, and frequency of examination as relevant considerations). Thus, the Court concludes that the ALJ properly considered the evidence in the record and reasonably concluded that Plaintiff is not as limited as Ms. Copenhaver opines.

**C.     The ALJ did not err in her consideration of Plaintiff's pain complaints.**

Plaintiff next argues that the ALJ erred in her consideration of Plaintiff's pain. (Pl.'s Statement of Errors 28–31, ECF No. 19.) As Plaintiff points out, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms", but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence." (*Id.*; R. 18.) Plaintiff contends that the medical evidence does support Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. (Pl.'s Statement of Errors 28–31, ECF No. 19.) The Court concludes that this contention of error is best characterized as

14

challenging the ALJ's assessment of the credibility of her testimony concerning the limitations she attributes to pain.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the consistency of a plaintiff's statements, without reaching the question of overall credibility, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017) (emphasis in the original). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the Court concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id*.

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir.1978)).

Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248 (internal quotations omitted); *see also Mason v. Comm'r of Soc. Sec. Admin.,* No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment

16

other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10-CV-1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *report and recommendation adopted*, No. 1:10 CV 1792, 2011 WL 3843703 (N.D. Ohio Aug. 30, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, the ALJ considered Plaintiff's testimony that she experiences back and knee pain, that her knee "pops out," that her leg is numb, and that she takes various medications for pain. (R. 18.) The ALJ then thoroughly discussed the record evidence and concluded that the objective evidence did not support Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); SSR 16-3P ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."); *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) (affirming ALJ's decision to discount plaintiff's subjective complaints regarding the severity of pain from her physical impairments in part due to lack of confirming objective evidence); *see also Isaacs v. Comm'r of Soc. Sec.*, No. 1:12-CV-591, 2013 WL 4067812, at *15 (S.D. Ohio Aug. 12, 2013), *report and recommendation adopted*, 2013 WL 4833670 (S.D. Ohio Sept. 10, 2013) (citing *Jones v. Sec'y, Health and Human Servs.*, 945 F.2d 1365, 1369–1370 (6th Cir. 1991)) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption). In particular, the ALJ pointed out that at times Plaintiff denied joint pain and numbness. (R. 18–19.) The ALJ further considered that in December 2014 and January 2015, Plaintiff had a normal physical examinations and normal

17

imaging findings.  (R. 19–20.)  In addition, the ALJ reasonably discounted Plaintiff's allegations based on her failure to follow recommended treatment.  *See Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow treatment can indicate that he is not as disabled as alleged." (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986))).  In particular, the ALJ noted that although Plaintiff had a physical therapy initial evaluation on August 1, 2018, she was discharged on August 14, 2018, due to non-compliance.  (R. 20.)  Accordingly, the Court concludes that the ALJ did not err in her credibility determination.

## D.     The ALJ did not err in her consideration of Plaintiff's headaches.

Finally, Plaintiff argues that the ALJ erred at step two when she found that Plaintiff's headaches were not a severe impairment.  (Pl.'s Statement of Errors 31–34, ECF No. 19.)  According to Plaintiff, the ALJ was correct that Plaintiff's headaches had improved since the alleged onset date, but Plaintiff contends that the ALJ erred by "because she only considered part of the evidence."  (*Id.* at 33.)  The Court finds this contention of error to be unavailing.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012).  The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

18

However, where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

The Court finds that any error the ALJ may have made in evaluating Plaintiff's headaches was harmless. At stage two, the ALJ found that Plaintiff had several severe impairments: obesity, lumbar levoscoliosis, and knee arthralgia. (R. 15.) Because the ALJ had already determined Plaintiff had these severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa*, 73 F. App'x at 803. Further, the ALJ considered whether Plaintiff's headaches required any additional limitations. (R. 16–17.) The ALJ provided the following discussion about Plaintiff's headaches:

> There is evidence that the claimant is effectively treated for migraine headaches and asthma. . . . Regarding migraines, on July 20, 2016, the claimant reported to Dr. Singh that her frequency of headaches had dropped significantly and she wanted to continue on Verapamil. During a wellness examination on August 9, 2017, the claimant reported no complaint of migraines with taking Verapamil and Topamax. Even as recently as during the consultative physical examination on January 2, 2019, the claimant denied any headaches or shortness of breath. . . . The most recent list submitted by the claimant reflects nothing prescribed for migraines . . . .
>
> The record supports finding that asthma and migraine headaches are not severe impairments through the claimant's date last insured. In order to determine the

19

> claimant's residual functional capacity, the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere. However, the evidence does not support a finding of any additional functional limitation other than that included in [the RFC].

(R. 16–17.)

As shown in the excerpt of the ALJ decision above, the ALJ considered whether Plaintiff's headaches required any additional limitation in the RFC. Thus, the ALJ properly considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803. Further, Plaintiff failed to specify what additional limitations the ALJ should have included due to her headaches that were not already accounted for by the physical limitations in the RFC. Accordingly, the Court finds no error with the ALJ's consideration of Plaintiff's headaches.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE